

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-1212

J.B., *et al.*,

                              *Plaintiffs-Appellants*,

v.

TIFFANY WOODARD, *et al.*,

                              *Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-4065 — **Sharon Johnson Coleman**, *Judge*.

ARGUED DECEMBER 16, 2020 — DECIDED MAY 12, 2021

Before WOOD, SCUDDER, and ST. EVE, *Circuit Judges*.

SCUDDER, *Circuit Judge*. This case began as a divorce and child custody dispute in state court. After an allegation surfaced that Edwin Bush had choked his son, the Illinois Department of Children and Family Services launched an investigation, and Bush's then-wife Erika successfully sought a court order suspending Bush's parenting time. Bush then turned to federal court and filed this lawsuit under 42 U.S.C. § 1983 on behalf of himself and his children, alleging violations of their

First and Fourteenth Amendment rights and claiming that DCFS employees' conduct set off a series of events culminating in a state court order infringing on his and his kids' right to familial association. The state defendants successfully moved to dismiss the case for lack of subject matter jurisdiction. The district court concluded that Bush and his children not only lacked standing to bring a constitutional challenge to the Illinois Marriage and Dissolution of Marriage Act, but also that the *Younger* abstention doctrine barred the court from ruling on the remaining constitutional claims. We agree on both fronts. Bush failed to allege facts sufficient to establish standing for his First Amendment claim. And adhering to principles of equity, comity, and federalism, we conclude that the district court was right to abstain from exercising jurisdiction over his remaining claims. We therefore affirm.

**I**

Edwin Bush's complaint supplies the operative facts, and we accept all well-pleaded facts as true and draw all reasonable inferences in his favor. See *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). We can also take judicial notice of matters of public record, including court filings and documents from the ongoing state court proceedings incorporated into the federal complaint. See *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019).

**A**

Erika and Edwin Bush married in 2008, and they had two children—J.B. in 2011 and A.B. in 2015. (For ease of reference, we refer going forward to Edwin and Erika by their first names.) In 2017 Erika filed for divorce in Illinois domestic

Case: 1:19-cv-04065 Document #: 41 Filed: 06/04/21 Page 3 of 17 PageID #:425
Case: 20-1212     Document: 00713824356     Filed: 06/04/2021     Pages: 17

No. 20-1212 3

relations court, and as part of the divorce proceedings, she sought sole custody of the two children.

On October 1, 2018, while divorce proceedings were ongoing, Erika told J.B.'s therapist that Edwin had choked J.B. The therapist called the Illinois Department of Children and Family Services to report the alleged abuse. DCFS responded by sending investigator Tiffany Woodard to interview J.B. at school on October 2. The following day, on October 3, Erika spoke to Woodard and repeated her allegation that Edwin had choked J.B.

On the evening of October 3, Woodard interviewed Edwin at his apartment while the children were there with him. Woodard explained that she was investigating the alleged choking incident, and Edwin responded that Erika had made an intentionally false report. He also accused Erika of physically abusing J.B. At this point, Woodard left Edwin's apartment for approximately twenty minutes and called her supervisor, Marco Leonardo, asking for permission to contact the Cook County Sheriff's Office to help with implementing a safety plan. Edwin claims that DCFS Area Administrator Tierney Stutz also had reviewed and approved the proposed safety plan.

Two sheriff's deputies responded to Edwin's apartment. Woodard informed the deputies that she was not there to remove the children but to establish a safety plan. Woodard and the deputies then entered Edwin's apartment to talk with him, but the conversation deteriorated and Edwin kicked them out. After leaving, Woodard called Leonardo to explain that she tried to discuss a care plan but that Edwin "just went down super south." J.B. and A.B. remained with Edwin that night.

On October 5, Woodard emailed Erika's divorce attorney to recommend that Edwin's parenting time with J.B. be limited to supervised visitation until Edwin underwent a psychological assessment. Four days later, Erika filed an emergency petition in the Illinois domestic relations court seeking a protective order and an emergency motion for supervised parenting time. She attached Woodard's October 5 email as an exhibit to her petition. At an emergency hearing held the next day on October 10, the court found that abuse had occurred and entered a protective order suspending Edwin's parenting time. The court held another hearing on November 30 after Erika requested a plenary order of protection. The court denied her request but suspended Edwin's parenting time until he attended anger management counseling. According to Edwin, the judge told him that he "was denied parenting time entirely because he invoked his constitutional right to eject" Woodard and the deputies from his home on October 3. Edwin also underscores that Woodard testified at the November 30 hearing that the DCFS abuse investigation showed that the alleged abuse was unfounded.

The domestic relations court appointed a therapist to conduct anger management counseling and permitted Edwin to have visitation with J.B. at the therapist's office on December 21, 2018. During that counseling session, J.B. said he could not remember his father ever grabbing him by the neck, had no idea why he could not see his father, and that he and A.B. were crying regularly. J.B. further reported that Erika had repeatedly slapped him and pulled his hair.

After the counseling session, Edwin filed an emergency motion to reinstate his parenting time. At a court hearing, he sought to introduce his son's statements, but the court ruled

No. 20-1212                                                    5

that Edwin could not rely on J.B.'s statements because the Illinois Marriage and Dissolution of Marriage Act prohibits "communications in counseling" from being "used in any manner in litigation." See 750 ILCS 5/607.6(d).

Fast-forward to February 2019. The domestic relations court entered a judgment dissolving Erika and Edwin's marriage and maintaining Edwin's termination of parenting time until he completed the anger management course and a separate counseling session. Edwin appealed.

In December 2019, the Illinois Appellate Court largely affirmed the judgment but remanded to the domestic relations court for a final judgment on the issue of Edwin's parenting time. As far as we can tell, when Edwin filed his complaint in federal court in June 2019, his child custody dispute remained ongoing, his parenting time had not been reinstated, and the state court appeal remained pending.

B

Edwin invoked 42 U.S.C. § 1983 and filed a three-count complaint in federal court on behalf of himself and his two children against DCFS investigator Tiffany Woodard, her supervisor Marco Leonardo, DCFS Area Administrator Tierney Stutz, and DCFS Acting Director Marc Smith.

In Count I, the plaintiffs, who we refer to as only Edwin for simplicity's sake, brought a constitutional challenge to section 5/607.6(d) of the Illinois Marriage and Dissolution of Marriage Act. He named Acting Director Smith in his official capacity as the defendant and alleged that the Act violates his First and Fourteenth Amendment rights by barring all communications made in counseling sessions from being used "in any manner in litigation nor relied upon by any expert

6 No. 20-1212

appointed by the court or retained by any party." 750 ILCS § 5/607.6(d). Edwin sees the statute as an overbroad restriction of speech that unlawfully prevented him from presenting J.B.'s exculpatory statements in the domestic relations court.

In Counts II and III, Edwin sued Woodard, Leonardo, and Stutz in their individual capacities seeking a declaratory judgment and monetary damages for violating his substantive and procedural due process rights under the Fourteenth Amendment. He also seeks a declaratory judgment against Acting Director Smith. The factual basis for these claims stems from investigator Woodard's attempt to implement a safety plan and her subsequent email to Erika's attorney about her encounter with Edwin on October 3, 2018. Woodard's actions, Edwin contends, led the domestic relations court to suspend his parenting time, thereby infringing upon his and his kids' fundamental right to familial association.

C

The DCFS employees successfully moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1). As for Count I, the district court held that Edwin lacked standing to challenge the constitutionality of the Illinois statute because he failed to allege that the named defendant—DCFS Acting Director Marc Smith—played any role in enforcing the law. Edwin therefore could not establish that his alleged injury was traceable to Acting Director Smith's conduct. As for Edwin's substantive and procedural due process claims, the court held that the *Younger* abstention doctrine barred the court from exercising jurisdiction over the claims because they related to the ongoing divorce and custody proceedings

in the domestic relations court. See *Younger v. Harris*, 401 U.S. 37 (1971).

Edwin now appeals.

## II

### A

Our analysis begins as did the district court's by considering whether Edwin satisfies Article III's standing requirements for his First Amendment challenge to the Illinois Marriage and Dissolution of Marriage Act.

Article III limits a federal court's authority to the resolution of "Cases" or "Controversies." The doctrine of standing exists to enforce this limitation and requires "that any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). To establish standing, a plaintiff must show that he has suffered an injury in fact fairly traceable to the defendant that is capable of being redressed through a favorable judicial ruling. See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). This familiar "triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998) (footnote omitted). At the pleading stage, the plaintiff must allege facts demonstrating each element of Article III standing. See *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Our focus is on causation. To plead this element, the plaintiff must allege facts showing a "causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. "Standing is not always lost when the causal connection is weak, and a defendant's actions need not be 'the very last

step in the chain of causation.'" *Doe v. Holcomb*, 883 F.3d 971, 978 (7th Cir. 2018) (citations omitted). The injury, however, "must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up).

B

The district court was right to dismiss Count I for lack of standing. Edwin claimed that the enforcement of section 5/607.6(d) of the Illinois Marriage and Dissolution of Marriage Act imposed an injury by preventing him from introducing J.B.'s statements in the domestic relations court. The shortcoming for Edwin, however, is that he has not alleged that his injury is "traceable to [Acting Director Smith] as opposed to the independent action of the state judiciary." *E.A. v. Gardner*, 929 F.3d 922, 924 (7th Cir. 2019). Edwin seems to recognize as much, acknowledging in his brief not only that it was the state court judge who enforced the Act's prohibition on admitting J.B.'s statements made during counseling, but also that DCFS Acting Director Smith had "no causal connection" to the Act's enforcement. The lack of any causal nexus between the Acting Director and the alleged injury defeats standing. Put another way, "[t]he state judiciary, not [Acting Director Smith], made the decision" to enforce state law, so that decision is not fairly traceable to any DCFS official. *Id.* at 925.

Edwin had a "straightforward way to raise his constitutional arguments"—by challenging section 5/607.6(d) of the Act in state court. *Id.* He could have presented his constitutional claim to the Illinois domestic relations court. As we explained in *Gardner*, "[s]tate courts can and do consider constitutional arguments in custody cases," so it would have been

No. 20-1212                                                        9

appropriate for Edwin to raise his claim in that forum. *Id.* (citing as examples *In re Marriage of Bates*, 819 N.E.2d 714 (Ill. 2004); *In re Andrea F.*, 802 N.E.2d 782 (Ill. 2003)). But in this federal forum, Edwin lacks standing to challenge the constitutionality of the Illinois law through a claim against DCFS's Acting Director.

### III

Edwin also challenges the dismissal of his substantive and procedural due process claims in Counts II and III. The district court concluded that the *Younger* abstention doctrine barred the court from exercising subject matter jurisdiction over these claims because they related to the ongoing state court divorce and custody proceedings. Although we agree with the district court's dismissal of these claims, we travel a different path in our reasoning.

### A

Recall what Edwin alleges in Counts II and III of his complaint. He raises substantive and procedural due process claims grounded in allegations that DCFS officials touched off a series of events leading to the infringement of his and his children's right to familial association. Edwin focuses specifically on investigator Woodard's failed attempt to implement the safety plan, her email to Erika, and Erika's affirmative use of this email in the state domestic relations court to limit Edwin's parenting time. In another place in his complaint, Edwin alleges that the state court judge denied him parenting time "entirely because he invoked his constitutional right to eject Woodard and the [deputies] from his apartment."

Plain and simple, Edwin's federal complaint recounts a series of cascading events beginning with Woodard's

investigation and culminating in domestic relations proceedings and eventually state court orders preventing parenting time with his kids. To his credit, at oral argument Edwin confirmed that this was a correct and accurate reading of the allegations in his complaint.

Note the timing. When Edwin filed his federal complaint in June 2019, the state court proceedings were ongoing, and the facts underpinning his loss of parenting time in state court are the same alleged facts he relies on to support his due process claims. Now in federal court, Edwin observes that he has a fundamental right to familial association. See, *e.g.*, *Troxel v. Granville*, 530 U.S. 57, 66 (2000) ("[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."). He invokes that right as a constitutional hook to bring federal claims under § 1983, thereby seeking federal court intervention to resolve essentially the same dispute that remains pending on the state court's docket. Right to it, Edwin's complaint leaves us with the clear and unmistakable impression that he seeks a favorable federal court judgment so that he can use that judgment to influence ongoing state court decision making. Therein lies the jurisdictional problem.

B

The judgment that Edwin seeks from the federal court runs contrary to the equity, comity, and federalism principles underlying our abstention doctrines, and the district court was correct to abstain from exercising jurisdiction over Edwin's due process claims. See *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 678–80 (7th Cir. 2010). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id*. at 677

(citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). Indeed, "[w]hen a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its *duty* to take such jurisdiction." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358–59 (1989) (emphasis added) (quoting *Willcox v. Consol. Gas Co.*, 212 U.S. 19, 40 (1909)).

"Under established abstention doctrines, however, a federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them." *SKS & Assocs.*, 619 F.3d at 677. A common thread underlying the Supreme Court's abstention cases is that they all implicate (in one way or another and to different degrees) underlying principles of equity, comity, and federalism foundational to our federal constitutional structure. These foundational principles counsel us to abstain from exercising jurisdiction here. See *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018) (explaining that the abstention doctrines were "not a perfect fit, and we ultimately base our decision on the more general principles of federalism that underlie all of the abstention doctrines").

It is not enough for Edwin to invoke § 1983 and point to his constitutional right to familial association. He cannot compel the adjudication of claims that would inject a federal court into a contested and ongoing family court custody dispute. Yet that is precisely what is going on. Edwin came to federal court to go on the offensive—to use a favorable federal court judgment in state court to influence the state judge's parenting time decisions. Allowing that federal disruption and interference would offend the principles on which the

abstention doctrines rest. Edwin seeks a level of intrusion by the federal courts that is "simply too high." *Id.* at 1074. Exercising federal jurisdiction over his claims would "reflect a lack of respect for the state's ability to resolve [these issues] properly before its courts." *SKS & Assocs.*, 619 F.3d at 679.

C

Edwin responds by emphasizing that none of the abstention doctrines—if examined and applied in isolated fashion—apply to his claims. At that basic level, Edwin is probably right. The problem for Edwin, however, is that it falls short to say that none of the abstention doctrines is a literal or perfect fit.

The Supreme Court has identified various circumstances in which federal courts must abstain from deciding cases otherwise within their jurisdiction. These abstention doctrines take their names from their corresponding Supreme Court decisions. See, *e.g.*, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (*Rooker-Feldman* abstention); *Younger v. Harris*, 401 U.S. 37 (1971) (*Younger* abstention); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) (*Burford* abstention); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) (*Rooker-Feldman* abstention).

Start with *Younger* abstention. This doctrine directs federal courts to abstain from exercising jurisdiction over federal claims that seek to interfere with pending state court proceedings. See *Younger*, 401 U.S. at 43–44. The doctrine applies in only three limited categories of cases, none of which fits exactly here: where federal court intervention would intrude into ongoing state criminal proceedings, into state-initiated civil enforcement proceedings akin to criminal prosecutions,

No. 20-1212 13

or into civil proceedings implicating a state's interest in enforcing orders and judgments of its courts. See *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013).

Nor is the *Rooker-Feldman* doctrine spot on. This doctrine precludes federal courts, save the Supreme Court under 28 U.S.C. § 1257, from adjudicating "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Because Edwin filed his federal lawsuit while the domestic relations court's proceedings over parenting time remained ongoing, he is not a state-court loser. See *Parker v. Lyons*, 757 F.3d 701, 705–06 (7th Cir. 2014). Even so, Edwin's allegations that DCFS investigator Woodard's actions caused the domestic relations court to limit his parenting is akin to him arguing in federal court that the state court decision violates his right to familial relations.

And the domestic-relations exception to federal jurisdiction is not a perfect match either. This exception covers a narrow range of issues "'involving the granting of divorce, decrees of alimony,' and child custody orders." *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 701 (1992)). Edwin's procedural and substantive due process claims do not fit the narrow and precise parameters of the exception, however, because his complaint does not, at least on its face, request the direct entry of a child custody order. Edwin instead seeks a judgment against defendants whose actions allegedly paved the way for the state court's orders. The Supreme Court has also suggested, however, that the *Burford* abstention doctrine "might be relevant in a case involving elements of the domestic

relationship even where the parties do not seek divorce, alimony, or child custody. This would be so when a case presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.'" *Ankenbrandt*, 504 U.S. at 705–06 (citations omitted).

Observing that no abstention doctrine is an exact fit does not resolve the jurisdictional inquiry, though. To insist on literal perfection—based on the allegations in Edwin's complaint—risks a serious federalism infringement. The domestic relations proceeding remains ongoing in the local Circuit Court of Cook County, and Edwin's complaint makes plain that the entire design of his federal action: to receive a favorable federal constitutional ruling that can be used affirmatively or offensively to shape—or perhaps change—the direction and course of the state court proceedings. Edwin's requests for declaratory and injunctive relief reinforce this observation. Indeed, granting declaratory or injunctive relief would provide Edwin with an offensive tool to take to state court to challenge that judge's orders. In these circumstances, federal courts need to stay on the sidelines.

The adjudication of Edwin's due process claims threaten interference with and disruption of local family law proceedings—a robust area of law traditionally reserved for state and local government—to such a degree as to all but compel the federal judiciary to stand down. See *DuBroff v. DuBroff*, 833 F.2d 557, 561 (5th Cir. 1987) (relying on *Burford* abstention and explaining "there is perhaps no state administrative scheme in which federal court intrusions are less appropriate than domestic relations law"). Put most simply, "federal courts may decline to exercise jurisdiction where denying a

federal forum would 'clearly serve an important countervailing interest,' including 'regard for federal-state relations.'" *Courthouse News Serv.*, 908 F.3d at 1071 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)).

D

Our reasoning aligns closely with our precedent. In *Courthouse News Service*, a news organization covering civil litigation sought injunctive relief under § 1983, contending that the First Amendment's right of access required the Clerk of the Circuit Court of Cook County to release newly filed complaints at the moment of receipt by the office—not after processing. See 908 F.3d at 1065. We concluded that the district court should have abstained from exercising jurisdiction because the relief the plaintiffs sought "directly affect[ed] the administration of the state courts and 'would run contrary to the basic principles of equity, comity, and federalism.'" *Id.* at 1070 (quoting *SKS & Assocs.*, 619 F.3d at 676–77). While there, as here, none of the abstention doctrines was a perfect fit, we nonetheless held that the plaintiff's "request for federal intrusion … calls for abstention." *Id.* at 1073.

We charted much the same course in *SKS & Associates*. There we applied *Younger* abstention principles when declining to exercise jurisdiction over a § 1983 action against the Chief Judge and the Sheriff of Cook County. See *SKS & Assocs.*, 619 F.3d at 676. The Sheriff was subjected to an order issued by the Chief Judge directing him not to carry out residential evictions during a period in December and during stints of extremely cold weather. See *id.* A residential property manager nonetheless came to federal court and sought an injunction requiring the Sheriff to speed up the eviction process—a result at direct odds with the state court order. We

declined to exercise jurisdiction, explaining that federal courts must have "proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 687 (quoting *New Orleans Pub. Serv.*, 491 U.S. at 364). It mattered not that the facts did not present a typical *Younger* scenario. We saw *Younger* as rooted in constitutional principles that were "far-from-novel" and indeed giving effect to the "even more vital consideration" of comity. *Id.* at 678 (quoting *New Orleans Pub. Serv.*, 491 U.S. at 364).

So too here. Underlying the *Younger* abstention doctrine is "the assumption that state courts are co-equal to federal courts and are fully capable of respecting and protecting [a plaintiff's constitutional] rights." *Courthouse News Serv.*, 908 F.3d at 1074. Even more, the Illinois domestic relations court is fully capable of respecting and adjudicating claims regarding Edwin's fundamental right to familial association. In the end, federal adjudication of Edwin's claims would "reflect a lack of respect for the state's ability to resolve [the issues] properly before its courts." *SKS & Assocs.*, 619 F.3d at 679. The abstention doctrines' underlying principles of comity, equity, and federalism counsel us to abstain from exercising jurisdiction over Edwin's § 1983 claims. See *Courthouse News Serv.*, 908 F.3d at 1074.

E

We close with one final observation. Our reasoning applies with equal force to Edwin's request for declaratory and injunctive relief, as well as his request for compensatory

damages. As for Edwin's request for compensatory damages, he would have to first establish a constitutional violation of his right to familial association, and he could then use that judgment to interfere with ongoing state court proceedings. Generally—at least in the context of the *Younger* abstention doctrine—staying the case, rather than an all-out dismissal of a claim, is the proper disposition where a plaintiff seeks compensatory damages. This is because the plaintiff cannot obtain money damages as part of the ongoing state court action. See, *e.g.*, *Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013) (staying a § 1983 case rather than dismissing it because monetary relief was unavailable to a plaintiff in his defense of ongoing criminal charges).

But this case is one where, despite the request for money damages, a stay is not practical. Because Edwin has two minor children—both named plaintiffs in this lawsuit—state court custody proceedings, or, at least oversight by the state court, will be continual until the children reach 18 years of age. We are unwilling to require this case to sit on the district court's docket for more than a decade. Nor are we affirming dismissal based on the *Younger* abstention doctrine alone, but rather, under the foundational principles of our federal system. "Unless and until the state courts have proven unwilling to address" Edwin's alleged constitutional claims, "the federal courts should not exercise jurisdiction over the matter." *Courthouse News Serv.*, 908 F.3d at 1071.

For these reasons, we AFFIRM.